*Rowe*, for the complainant.

*T. C. Woodman*, for the respondents.

———————◆———————

ALBERT HALL and wife *vs.* INHABITANTS OF UNITY.

From a well-wrought, safe, and convenient traveled path on a highway, a passage-way, not made by the town, led by a slightly circuitous course to a watering-trough, erected without authority of the town, within the limits of the highway, for the purpose of enabling travelers to water their animals, and thence turned into the main track again several rods from the point of departure. The plaintiff with his wife, traveling along the highway with a horse and carriage, drove out to the trough and watered his horse; and while leaving the trough, the wheel of his carriage was drawn upon a rock lying in its natural bed in the passage-way, ten feet from the usually traveled track, and thereby the plaintiff's wife was thrown from the carriage upon the trough and

Hall *v.* Inhabitants of Unity. .

injured; *Held*, by CUTTING, WALTON, DICKERSON, and TAPLEY, JJ., that the actual condition of the passage-way being, in fact, such as it appeared to be, and containing nothing to allure, deceive, or ensnare travelers into concealed or unperceived danger or difficulty, the town is not liable.

By APPLETON, C. J. ; KENT, BARROWS, and DANFORTH, JJ., that the town is liable.

By Pub. Laws of 1870, c. 100, § 1, in any civil action in which there is a subsisting verdict of a jury, if a majority of the justices, qualified to sit in the case, do not concur in granting a new trial, it shall be the duty of the court to order judgment on the verdict.

ON EXCEPTIONS.

CASE for injuries received by the female plaintiff, while traveling upon an alleged public highway, which it was averred the defendants were bound to keep in repair.

The proof tended to show that the highway, opposite the place where the injury occurred, was, and had been, for more than 'ten years, well defined, safe and convenient for travelers ; that from the main path and within the limits of the highway there was a path, or passage-way, leading round to a watering-trough, and thence turning into the main track again beyond the trough, frequently resorted to by travelers, for the purpose of watering their animals ; that the trough was placed there some ten years before the injury, by an inhabitant of the town of Unity, but with out any authority from the town ; that the plaintiffs, traveling along said highway with a single horse and wagon, drove from the main track, or straight and usually traveled part of the way, along and upon said path or passage-way, to the trough for the purpose of watering their horse ; that the horse drank, and, on starting along from the trough, one of the wagon wheels struck a small rock, not before observed by the plaintiffs, lying in its original place in the wheel-track of the path, the shock of which, threw the wife from the wagon upon the trough, and produced the injury complained of.

The plaintiffs contended that the rock constituted a defect in the highway, for which the defendants were liable.

The presiding judge instructed the jury, among other instructions upon the subject not excepted to, as follows :

If the jury find that the traveled part of the road was safe and

convenient for travelers, that the rock in question was situated outside of such traveled part, and nine or ten feet distant from the center thereof; that the space between the rock and the trough, was used by travelers only for the purpose of watering their teams, and that said passage-way, including the rock, was as it appeared to be, containing nothing to deceive the traveler or allure him into unperceived difficulty or danger, and that the plaintiffs left the traveled part of the road to go through the passage-way to water their horse, and the injury was occasioned by motion of the wheel going over the rock, the town would not be liable, if the rock was as high as the plaintiffs claimed.

But, if there were two roads at the place of the accident, within the limits of the highway, used indifferently by travelers for the ordinary purposes of travel, and the plaintiffs took the one running by the trough, and the injury was received by the wheel going over the rock while the plaintiffs were in the exercise of ordinary care, and without any fault or defect in their horse, wagon, or harness, that the rock would constitute a defect, and the town would be liable.

The jury found specially that the way was not defective, and returned a general verdict for the defendants, and thereupon the plaintiffs alleged exceptions.

*A. G. Jewett,* for the plaintiffs, contended :

1. That a fair construction of the statute required the defendants to keep the pathway by the trough " safe and convenient," while they permitted the trough to remain there, an object of temptation to travelers' teams, and allure them out of the main path by an attractive artificial fountain of water; and that the legal presumption is, that the defendants intended by such fountain to invite travelers thereto ; and that all persons traveling thither, had a right to presume in law that the pathway to the place of temptation was safe and convenient, and was expected to be traveled by those whose teams needed watering.

2. That no construction of this statute has, as yet, narrowed the

liability of towns to the gauge prescribed by the instruction excepted to.

3. *Cobb* v. *Standish*, 14 Maine, 198, settles the principle involved here.

Then the plaintiff went from a safe and convenient path to a natural fountain for the sole purpose of watering his horse, and the horse sank in the water and was drowned, lost by an unknown and unseen defect in the by-path; while here the plaintiff left a safe and convenient way, went to an artificial fountain, where by an unknown, and unseen, and hence concealed defect, the wife was thrown upon the artificial object, and crippled for life.

4. An artificial reservoir of water, thus situated, makes a stronger case of liability than a natural one, because it was made by man, and placed there to attract the thirsty horse from the main path into the one leading to the fountain; and the law holds towns to a stricter accountability for damages sustained through artificial objects than natural ones.

5. State policy, established twenty-five years ago, by R. S., c. 18, § 52, has brought into existence many thousands of such watering-troughs. They are all for public convenience, and to be "easily accessible for horses and carriages," and they are paid for by the town's money. "Easily accessible for horses and carriages," does not mean that the traveler is to pass over them at his own peril.

*A. G. Watson*, for the defendants.

DICKERSON, J. This is an action for an injury received on account of an alleged defect in a public highway. It appears that the way opposite to the place where the accident happened was well defined, safe, and convenient for travelers; that from this road, and within the limits of the highway, there was a passage-way, not made by the town, leading round to a watering-trough (placed there by an inhabitant without authority from the town), and coming into the road beyond; that the plaintiff drove his horse from said highway, or traveled part thereof, around said passage-way to the trough, for the purpose of watering him, and that while in the

act of leaving the trough, after he had drank, the horse drew the carriage-wheel upon a rock lying in its original place in the passage-way, in consequence of which the plaintiff's wife was thrown from the carriage upon the trough, and injured. The jury found that the passage-way was what it appeared to be upon the face of the earth, containing nothing to allure, deceive, or entrap travelers into concealed or unperceived difficulty or danger, and was used by travelers only for the purpose of watering their animals.

The exceptions raise the single question, whether the town is liable for an injury received by a traveler, while using such a passage-way for such a purpose, by reason of its being defective and out of repair, so as to be unsafe for travelers.

The statute requiring towns to keep their ways safe and convenient for travelers is to be reasonably construed, both with respect to the state of repair and the width of the way to be traveled. Both of these considerations depend, in a great degree, upon the amount of travel over the particular way. A broader width for travel and a higher state of repair are required in cities than in less populous places. The statute requires that so much of the highway only shall be kept safe and convenient, as the safety and convenience of travelers demand. It is the right of towns, subject, however, to these conditions, to prescribe, set apart, and prepare the particular portion of the way to be kept in repair and used for travel, upon their responsibility. When towns have done this, they will not be liable for injuries sustained by travelers in departing from the path prescribed for travel, unless there is something connected with such way, calculated to allure, deceive, or entrap the travelers into concealed or imperceptible danger or difficulty. If, for instance, a passage is permitted to exist, leading from the traveled part of the road across a natural stream, or by a watering-trough, made or erected without authority of the town, to enable travelers to water their animals, within the limits of the highway, the town will not be liable for an injury to a traveler in using such passage-way for this purpose, if its actual condition is obviously such as it appears to be, though it would be liable if such side-way contained

concealed dangers, pit-falls, or man-traps, into which the traveler had been allured by the desire and prospect of refreshing his horse. *Cobb* v. *Standish*, 14 Maine, 198.

The reason for this distinction is obvious. Towns are not required to provide watering-places for the accommodation of travelers, or passage-ways to such as are provided without their authority, whether by name or nature; but, if they suffer such conveniences to remain within the limits of a highway, they are bound to take care that the passage-way thereto shall not serve to allure the traveler into unforeseen and imperceptible danger. In such case the town is presumed, and it is its duty to foresee the danger, and guard the traveler against it. Not so with the traveler; he has a right to presume that such way is, as it obviously appears to be, free from hidden snares or pit-falls, and if it prove otherwise, and he is injured thereby, without fault on his part, the town will be liable. If the rule of law were otherwise, towns, as a matter of self-protection from liability, would either be obliged to erect barricades against access to such conveniences, or make the passage-way to and from them as safe and convenient, as that part designated for the public travel.

The decision in *Cobb* v. *Standish*, 14 Maine, 198, rests upon this identical distinction. In that case the passage-way from the road was a well-beaten track down to what appeared to be a safe and convenient watering-place for cattle and horses, but which proved to be a mud-hole so deep and miry that the horse sank into it, and was submerged and killed. The decision was not placed upon the ground that the passage-way was out of repair, or that the pool of water, *ipso facto*, constituted a defect within the limits of the highway, but because the town had suffered a trap to remain within the limits of the highway, into which it ought to have foreseen that animals, attracted by the water, might fall. "A traveler," say the court, "aware of the danger, might have escaped it, but there was nothing provided to point out or indicate the danger," plainly indicating that if the danger had been apparent to a common observer, the town would have been exonerated from liability.

The case we are considering is clearly distinguishable from that of parallel roads, suffered by a town to be indifferently used for the purposes of travel. Towns are required to make their highways safe and convenient for travelers, and if they choose to make two tracks where one would be sufficient, or allow travelers to use either of two tracks for the purposes of travel within the limits of the highway, they are required to make both safe and convenient. But towns are not bound to make side-roads to and from watering-places, established without their authority, for the accommodation of travelers. The one is a general purpose contemplated by statute, while the other is a special one, not coming within its purview. To deduce the liability of towns to keep side-roads to watering places safe and convenient for travel, from their liability to keep parallel roads in the same condition, is to argue the same result from different and dissimilar premises, and to confound the case of a liability created by statute, with one where the statute imposes no liability.

The plaintiff chose to leave a safe and convenient road, designated by law for his accommodation, and to drive his horse out upon a side-path, not made by the defendants, nor used by the public, except for a special purpose, to a trough to drink, which had been placed there without authority of the defendants. The side-path was in the same condition that it appeared to be, containing nothing to allure or mislead the plaintiffs into concealed or imperceptible danger. The defendants had wrought, and made safe and convenient, that part of the highway allotted for the public travel. The law does not require them to do more in the premises. The plaintiff, therefore, deviated from the traveled part of the highway, at his own risk, and must suffer the consequences.

Our conclusion, therefore, is, that the exceptions should be overruled.

CUTTING, WALTON, and TAPLEY, JJ., concurred.

Opinion of APPLETON, C. J.; KENT, BARROWS, and DANFORTH, JJ., drawn by

KENT, J. After a highway has been duly laid out and established, it is the duty of the town to make the same safe and convenient for travelers thereon. The highway, in its entire width, is set apart and opened for this purpose, and a traveler has a legal right to use any part of it. But, as a general rule, a town is not obliged, on common country roads, to make a traveled path the whole width of the road as laid out. *Dickey* v. *Maine Tel. Co.*, 46 Maine, 483. But there is no fixed rule on this subject. The rule that governs, is that given in the statute. " Highways, townways, and streets, legally established, are to be opened and kept in repair, so that they are safe and convenient for travelers with horses, teams, and carriages." R. S., § 37, c. 18. Safety and convenience are the essential requisites. A single well-made pathway ordinarily meets this requirement, if it be of sufficient width. But there may be cases where safety and convenience require a very wide path, or a double track, — or even in cities, the preparation of the whole width of the way for common travel. In every case the question is, whether the way is sufficient to meet the requirements of the statute.

If there are two distinct paths which have been made, or opened for public travel, and equally inviting the traveler to enter and pass along thereon, the town is bound to keep both safe and convenient, even if one of the paths would have been sufficient. Why? Chiefly, if not entirely, because the town has made or allowed to exist both paths, inviting travel on each, and giving the travelers to understand and believe, that both are intended for his use, at his option. Here, then, is something more required of the town than to show one good and sufficient pathway.

The ruling of the presiding judge in this case admits this, and holds the town bound to keep both paths in repair.

If, then, there may be a liability, even when there is one straight and sufficient wrought way, the question is, what are the limits of that liability. Is it limited to the existence of two substantially parallel paths, or may it extend to other used portions of the road ?

The question in the case at bar arises under this state of facts. A watering-trough had been placed on the side, and within the limits of the highway, ten years before the accident or injury to the plaintiffs. It was placed there by an individual, without any authority from the town, but had been resorted to frequently by travelers to water their teams. A path or passage-way had been made from the straight wrought road to the trough, and from the trough, in a circular form, back to the road at a point different from the point of departure. The main way from which the path diverged, and to which it returned, was safe and convenient.

The case, as presented by the rulings, assumes that this path was defective and out of repair. In fact, as we understand the matter, the question is, whether the town can be held liable for an injury caused by a defect in this path, however great it may be. Is the town bound to take any care or oversight over it?

The judge ruled that the town might be held, "if there were two roads at the place of the accident, within the limits of the highway, used indifferently by travelers for the ordinary purposes of travel. But there was no evidence of any such state of things, according to the case as stated in the exceptions, and no claim of any second way thus used. There was one well made, usually traveled path. The side-path was used only by the travelers, who turned from this main path to give water to their animals.

The judge ruled, that the path thus used was not a part of the highway which the town was, by law, bound to keep in repair, if the pathway, as it appeared to be, containing nothing to deceive the traveler, or allure him into unperceived difficulty or danger.

There seems to have been nothing of the kind in the path to the trough. It was what it appeared to be, a common way, with nothing more to deceive or to allure into concealed, or not obvious difficulties or dangers, than on ordinary roads, which yet may be legally defective.

The question, then, is plainly this, Is a town responsible at all, or in any degree, if such a path is defective, and out of repair, so as to be unsafe for travelers?

Assuming, in the first place, that the town was not bound to make it, or to allow the trough to stand on the side of the way, yet, if it is thus allowed to be there for ten years, with a well defined and trodden path to it, all or most of this time, why does not the same rule apply to it, as to a second parallel pathway, not required, but actually existing? The same reason for charging the town exists in both cases. This path is within the limits of the highway, is a standing invitation to all travelers to use it, as part of the traveled way. It is true that it is a deviation from the principal way, but it is for a legitimate purpose, and one which the traveler has a right to use, and which common humanity often requires him to use. He finds a path or way opened for him. He does not know whether the town or an individual erected the trough, or made the road to it. They are there, and he is tacitly invited to enter and refresh himself and animal. We are at a loss to see why the town should not be liable in this case, on the ground before alluded to, viz., that it permits or prepares or allows to exist, a path which the traveler has a right to regard as a way open for him to use, for a legitimate purpose, on his journey. Whenever a part of the highway is thus allowed by the town to be in a condition inviting travelers to use it, as a traveled way, for the legitimate purposes of their journey, the town must keep it in a reasonable state of safety and convenience, although there may be another safe and convenient path in the direct line of travel, and although no legal obligation or duty required the existence of this second or side-path, in order to make the highway safe within the statute.

The case of *Cobb* v. *Standish*, 14 Maine, 198, rests upon this principle. It is true, that in that case the side-path led to a natural pool of water, partly in the highway, which was miry and unsafe. But there was a well-beaten path from the commonly traveled part of the highway down to the water. The court say, " Towns are not obliged to provide watering-places for the public convenience ; but when they are provided by nature in the highway, they ought not to be suffered to become pitfalls, first to allure and then to destroy horses or other animals, turned aside to partake the refresh-

Hall *v.* Inhabitants of Unity.

ment to which they are thus invited." Does not the same principle apply where the defect is in the way itself, and not at the end of the path, to the extent of rendering the way, thus inviting the traveler, unsafe and dangerous? The liability in each case arises, not from a want of a good and sufficient traveled way, but in allowing an unsafe and dangerous side-path, apparently intended to invite the travelers to enter and use it.

Since the decision in the above case, the general sentiment of the public, in favor of these side refreshments within the public highways, has led the legislature to give encouragement to the erection of such watering-troughs, by providing that three dollars annually shall be allowed by abatement on the tax, of the person who shall construct and maintain one beside a highway. R. S., § 52, c. 18. Although this statute does not in terms require that the towns shall erect them, yet it plainly shows that they are regarded as of great public utility, and almost a necessity to the traveler, with his team, and are a part of what the law requires to make the way " safe and convenient." The statute also contemplates that the traveler will, as occasion may require, turn aside from the usually traveled path to seek the refreshment, and that in so doing, he will not be departing from the proper purposes of his journey. The statute requires that the trough shall be so located as to be " easily accessible for horses and carriages." It cannot be so, ordinarily, unless a path is cleared or made, so that horses and carriages can safely pass to and return from the trough.

We are not called upon, in this case, to determine whether in all cases the town is bound to make such path to every watering-trough that may be set up. There would seem to be strong grounds for holding a town bound to see that such safe way should be made to every such trough, which, in the language of the statute, has been " thought by the assessors for the public convenience," and which entitles the person erecting and keeping it, to the allowance named. It would be manifestly wrong for a town thus to adopt, and sanction, and offer to the public, as for the traveler's use, such a watering place, and then leave the approach to it

unsafe and dangerous to the wayfarers, who might turn to it by day or by night.

We have no doubt, however, if such path has been made and has existed for years, and been used for this purpose, that the town is bound to keep it reasonably safe and convenient. And this liability does not depend upon the question by whom erected, or whether its convenience has been passed upon by the assessors or not. It rests upon the general principles before stated.

We do not intend to say that every side-path, made by individuals for private use, leading from the main road to their dwellings or fields, come within the rule before stated. These are not detours returning to the road at a different point from the one of departure, and all within the limits of the highway, but a single straight line, leading out of the limits, and from their location and extent showing to the travelers that they are no part of the way for general travel or use, in going from place to place. Such paths mislead no one, nor do they invite any one to use them for refreshment or to make progress on their way. Every one, at a glance sees that they are no part of the way prepared for travel along the highway, but simply paths which one may use to leave the highway, if he so desires. Towns are not bound to provide such sidepaths for the accommodation of persons living on the road, and no one can be misled as to their character or use.

The rulings of the judge were not in accordance with the views we have taken, and we think that a new trial should be granted.

But by virtue of Pub. Laws of 1870, c. 100, § 1, since there is a subsisting verdict for the defendants, and a majority of the justices qualified to sit in the case do not concur in granting a new trial, there must be,                    *Judgment on the verdict.*

APPLETON, C. J.; BARROWS and DANFORTH, JJ., concurred.